## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Leander Stocks,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil No. 14-cv-01999 (APM)** |
| ) | |
| **Cordish Companies, Inc.** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

### I.    INTRODUCTION

Plaintiff Leander Stocks alleges he was injured by a runaway roulette wheel ball at Maryland Live! Casino, a company he contends is owned and operated by Defendant Cordish Companies, Inc.  Stocks asserts that he suffered physical injuries and emotional distress from the events that occurred during his visit to the casino on December 15, 2013.

Now before the court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2).  Defendant argues that Plaintiff's Amended Complaint fails to state a claim because Defendant does not own or operate Maryland Live! Casino and thus cannot be held liable for the acts alleged.  Further, Defendant argues that the court lacks personal jurisdiction over it because it does not conduct any business in the District of Columbia.

After considering the parties' arguments and supporting evidence, the court denies Defendant's motion to dismiss.  Defendant has submitted sworn affidavits to support its

Rule 12(b)(6) argument, thus requiring the court to evaluate the motion not under Rule 12(b)(6), but under Rule 56's summary judgment standard.   Because there are material discrepancies between Defendant's assertion here that it does not own Maryland Live! Casino and statements to the contrary on its website, including one that expressly states it "owns and operates" the casino, the court concludes that it would be premature to grant summary judgment before discovery.

The court also denies Defendant's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) because Defendant's television advertising within the District of Columbia, designed to attract casino patrons from this jurisdiction, is sufficient to bring Defendant within the court's long-arm jurisdiction.[1]

## II.    BACKGROUND

At roughly midnight on December 15, 2013, Plaintiff Leander Stocks was a patron at Maryland Live! Casino ("Maryland Live!") in Anne Arundel County, Maryland.   Am. Compl. Count 1 ¶ 1, ECF No. 4.[2]   While playing roulette, a casino "employee operating the [roulette wheel] negligently caused the wheel's hard ball to become airborne and strike the Plaintiff just above the left eye at high velocity."   *Id.* ¶ 2.   Another employee escorted Plaintiff to a private room to assess his injuries, *id.* ¶ 3, and once there administered, without Plaintiff's consent, "unidentified liquid drops directly into the Plaintiff's left eye," *id.* ¶ 5.   After receiving the eye drops, Plaintiff became disoriented, fell forward, hit his head against a door, and lost consciousness.   *Id.* ¶ 7. Plaintiff was treated at a local hospital emergency room for a contusion from the initial impact of the roulette wheel ball and a concussion related to his fall.   *Id.* ¶ 8.   Since the incident, Plaintiff

---

[1] On February 25, 2015, Plaintiff moved for leave to file a Second Amended Complaint to add as defendants PPE Casino Resorts Maryland, LLC, and Maryland Live! Casino No. 777. Mot. for Leave to File Second Am. Compl., ECF No. 9.  The court will grant that motion in a separate Order.  The proposed Second Amended Complaint contains no new allegations against Defendant Cordish Companies.  *See generally* Second Am. Compl., ECF No. 9-1.  For that reason, the court's analysis and conclusion is unaffected by the Second Amended Complaint's filing.

[2] Both Plaintiff and Defendant began every section of their pleadings with a paragraph numbered "1."  For clarity, the court will include the section name and paragraph number in each of its citations to these pleadings.

has suffered from blurred vision, an occasional loss of coordination, and regular post-traumatic stress headaches.  *Id.* ¶ 9.

Though his complaint is less than clear, Plaintiff appears to advance two claims.  First, he alleges that his injuries were caused by "negligent and willful misconduct by the Defendant's employees" and "Defendant's negligent operation of its roulette wheel." *Id.* ¶ 10.  Second, he alleges that the unconsented act of putting liquid in his eye amounted to battery.  *Id.* Count 2 ¶ 2. Plaintiff seeks to hold Defendant Cordish Companies, Inc. ("Cordish") liable for his injuries because Cordish "owns and operates Maryland Live! Casino" and conducts business in the District of Columbia.  *Id.* Parties ¶ 2.  According to the Amended Complaint, Defendant "purposefully directs activities towards" residents of the District of Columbia through advertisements placed on District of Columbia "television stations with the aim of attracting" its residents to Maryland Live!. *Id.*  Jurisdiction and Venue ¶ 3.

## II.   DISCUSSION

### A.   Dismissal Because Cordish Claims Not to Own Maryland Live!

The court turns first to Defendant's contention, ostensibly brought under Rule 12(b)(6), that the complaint must be dismissed because it does not own or operate Maryland Live! and, therefore, cannot be held liable for the alleged tortious acts of the casino's employees.

#### 1.   *Standard of Review*

Before addressing the merits of that argument, the court must decide the applicable standard of review.   When considering a motion to dismiss under Rule 12(b)(6), courts are permitted only to consider matters *within* the complaint.  Those include "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is"

produced by the defendant on the motion to dismiss.  *Hinton v. Corrections Corp. of America*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (citations omitted) (internal quotation marks omitted).  On the other hand, if the parties present matters "outside" the complaint, the "motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).

Here, Defendant's "motion to dismiss" was accompanied by a sworn affidavit from its attorney, Chris Haboian, which makes several outside-the-complaint assertions, including that Cordish "does not own or operate the Maryland Live! Casino" and that no Cordish employees work at the casino or were involved in the incident. Mot to Dismiss, Haboian Aff. ¶¶ 3-4. Additionally, Defendant filed a "Supplemental Reply In Support of Motion to Dismiss," ECF No. 11, in which it submitted a second sworn affidavit from Haboian.   Supp. Haboian Aff., Mar 16, 2015, ECF No. 11-1.  Like the first affidavit, the second affidavit states additional facts about Cordish's alleged non-ownership of Maryland Live! *See id.* ¶¶ 5-7.  Because these affidavits are matters outside the complaint, Rule 12(d) directs the court to treat Defendant's motion not as one to dismiss under Rule 12(b)(6), but as one for summary judgment under Rule 56.

When, as here, a motion to dismiss is converted to one for summary judgment, the court must determine whether there is a genuine issue of material fact.  Fed. R. Civ. P. 56(c).  *See also Mazaleski v. Treusdell*, 562 F.2d 701, 708 (D.C. Cir. 1977) (treating the district court's ruling as an award of summary judgment for appellees and finding "the applicable standard of review [is] whether there existed any genuine issue of material fact").  A genuine dispute over a material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must review the evidence "in the light most favorable to the nonmoving party" and all inferences should be drawn in favor of the nonmoving party. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011) (citing *Anderson*, 477

U.S. at 255).  The court should grant summary judgment in favor of the defendant if the plaintiff, "after adequate time for discovery," is unable to make a showing to establish an essential element of its case for which it will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> 2.   *There is a Genuine Dispute of Fact as to Cordish's*
> *Ownership of Maryland Live!*

On the limited record before it, the court finds that there exists a genuine dispute of material fact as to whether Cordish owns Maryland Live!.  As discussed, with its motion, Cordish submitted an affidavit from its counsel, Chris Haboian, in which he asserted that Cordish does not own Maryland Live! and that none of its employees work at the casino or were involved in the incident. Mot. to Dismiss, Haboian Aff. ¶¶ 3-4.  To rebut those assertions, Plaintiff offered statements from Cordish's own website.  They include:

- "The Cordish Companies is one of the largest and most successful *operators* of entertainment districts and concepts in the United States.  Within its entertainment portfolio, The Cordish Companies *owns and manages* several Live! entertainment districts throughout the United States."   Pl.'s Resp. To Def.'s Reply, at 2 (quoting http://www.cordish.com/sub.cfm?section=content&ID=1&nav=about) (emphasis added).

- "As a testimony to the long-term vision of its family leadership, The Cordish Companies still *owns and manages* virtually every business it has created."  *Id.* (emphasis added).

- "The Cordish Companies opened the $500+ million Maryland Live! Casino in June 2012 which is the largest gaming, retail and entertainment destination in the country with 182 table games and more than 4,300 slot machines; nationally-acclaimed

restaurants; designer name brand shopping; and a state-of-the-art, live entertainment venue."   Opp.   to   Def.'s   Mot.   to   Dismiss   ¶   1   (quoting http://www.cordish.com/sub.cfm?section=content&ID=4&nav=company).

Cordish acknowledges that its website contains statements suggesting it owns Maryland Live!.  Supp. Haboian Aff. ¶ 5.  But it states that "[t]hose statements on the website are inaccurate," *id.*, and that these "inaccurate references were made in an effort to demonstrate to viewers of the website that The Cordish Companies, Inc. was involved as a developer of the casino and to further the marketing of The Cordish Companies, Inc. as a developer in the Gaming and Lodging industry," *id.* ¶ 6.  Cordish represented to the court in mid-March 2015 that, "[g]iven the lack of clarity caused by the inaccurate statements on the websites identified above, the websites are being revised to remove the incorrect information concerning ownership and operation of the Maryland Live! Casino."  *Id.* ¶ 7.  As of the filing of this memorandum opinion, however, Cordish's website contains the very same statements identified by Plaintiff.[3]

The discrepancies between the statements on Defendant's website and those made through the Hoboian Affidavits raise genuine issues of material fact that are in dispute.  At this early stage, when Plaintiff has had no opportunity for discovery, granting summary judgment to Cordish— when it concedes that its own public statements about its ownership of Maryland Live! are "inaccurate," and yet have gone uncorrected—would be inappropriate.  *See McWay v. LaHood*, 269 F.R.D. 35, 36 (D.D.C. 2010) ("[S]ummary judgment is ordinarily inappropriate before discovery is complete."); *see also Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274

---

[3] http://www.cordish.com/sub.cfm?section=content&ID=1&nav=about (last visited July 24, 2015); http://www.cordish.com/sub.cfm?section=content&ID=4&nav=company (last visited July 24, 2015).  The Maryland Live! casino website now states that "Maryland Live! Casino is owned and operated by an affiliate of The Cordish Companies."  https://www.marylandlivecasino.com/about/about/ (last visited July 24, 2015).

(D.C. Cir. 1997), *as amended* (Jan. 30, 1998) (finding the district court erred in deciding the case as a matter of law because it did not allow discovery before issuing its summary judgment ruling).

## B.      Dismissal for Lack of Personal Jurisdiction

The court turns next to Cordish's assertion that dismissal of the Amended Complaint is warranted because the court lacks personal jurisdiction over it.

### 1.      *Standard of Review*

On a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing a factual basis for a court's exercise of personal jurisdiction over the defendant. *Crane v. New York Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990). The plaintiff must demonstrate the defendant's connection with the forum by alleging specific facts. *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). Factual discrepancies in the record "must be resolved in favor of the plaintiff." *Crane*, 894 F.2d at 456. The court, however, need not "treat all of the plaintiff's allegations as true" and may consider affidavits and other materials to determine the exercise of jurisdiction. *Capital Bank Int'l Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d 72, 74 (D.D.C. 2003).

### 2.      *Long-Arm Jurisdiction Over Cordish*

In a diversity action, such as this, this court applies the District of Columbia's long-arm statute, D.C. Code § 13–423 (2006), to determine whether it has personal jurisdiction over a defendant.[4]  *See GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000); *Crane*, 894 F.2d at 455. That statute states in relevant part:  "A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for

---

[4] A defendant, of course, also can be sued when a court can assert general jurisdiction over it.  *See Daimler AG v. Bauman*, __ U.S. __, 134 S. Ct. 746, 745-55 (2014).  Here, however, Plaintiff explicitly has said that it does not seek to establish general jurisdiction over Defendant, only specific jurisdiction.  *See* Pl.'s Resp. to Def.'s Reply, at 5.

relief arising from the person's . . . [t]ransacting any business in the District of Columbia." D.C. Code § 13-423(a)(1).  *See also* D.C. Code § 13-423(b) (providing that, when personal jurisdiction is founded on the long-arm statute, the asserted claim for relief must "aris[e] from the acts enumerated" in § 13-423(a)).

The District of Columbia Court of Appeals has observed that "there are no 'mechanical tests' or 'talismanic formulas' for the determination of personal jurisdiction under § 13-423(a)(1) and (b), and the facts of each case must be weighed against notions of fairness, reasonableness and substantial justice." *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 329 (D.C. 2000) (en banc).  Determining whether there are enough contacts to exercise jurisdiction "requires [the court] to examine the quality and nature of the nonresident defendant's contacts with the District and whether those contacts are voluntary and deliberate or only random, fortuitous, tenuous and accidental." *Id.*  "[T]he most critical inquiry is not whether the nonresident defendant is physically present in the forum but whether the defendant's contacts with the forum are of such a quality and nature that they manifest a deliberate and voluntary association with the forum." *Mouzavires v. Baxter*, 434 A.2d 988, 995 (D.C. 1981).

Defendant argues that the court lacks personal jurisdiction over it because "Cordish does not reside or do business in the District of Columbia, and because Plaintiff's Complaint concedes that all of the events giving rise to the Plaintiff's claim occurred in Maryland."  Def.'s Mot. to Dismiss at 2.  Defendant further offers the Haboian Affidavit to establish that "[i]t has no office in Washington, DC, maintains no bank accounts in Washington, DC, and does no business in Washington, DC."  Mot. to Dismiss, Haboian Aff. ¶ 2.  Plaintiff does not dispute that Defendant has no office or bank accounts in the District of Columbia.  Rather, it contends that Defendant does "transact business" in the District of Columbia, and therefore the court can exercise

jurisdiction over it, because Defendant "purposefully directs activities towards the residents of the District" of Columbia through advertisements on District of Columbia "television stations with the aim of attracting District" residents to Maryland Live!.  Am. Compl. Jurisdiction and Venue ¶ 3; *see* Pl.'s Opp'n to Def.'s Mot. to Dismiss ¶ 9.

To support that argument, Plaintiff puts all of its eggs in the *Shoppers Food Warehouse* basket.  Like this case, *Shoppers Food* involved a simple tort—a slip-and-fall—for which a District of Columbia resident sought to hold a Maryland corporation liable in a District of Columbia court. The defendant grocery store had no locations in the District of Columbia and the slip-and-fall occurred in one of its Maryland stores.  The D.C. Court of Appeals nevertheless held that District of Columbia courts had specific jurisdiction over Shoppers Food Warehouse because its extensive advertising activity directed at attracting District residents was sufficient to confer personal jurisdiction.  *Shoppers Food Warehouse*, 746 A.2d at 322.  The record in *Shoppers Food* was "replete" with the grocery store chain's advertisements in *The Washington Post*.  *Id.* at 323.  The advertisements contained bold letters, shopping incentives, and even declared that the grocery store was worth the drive no matter where customers lived.  *Id.* at 330.  The D.C. Court of Appeals held that through this advertising the grocery store purposely availed itself of the privilege of conducting business in the District of Columbia and thus should have reasonably anticipated being haled into court in the District of Columbia.  *Id.* at 331.

The D.C. Court of Appeals also held that the slip-and-fall "arose out of" Shoppers Food's advertising in the District of Columbia.  *Id.* at 338.  To meet the "arising out of" test under D.C. Code § 13-423(b), the court stated that there must be "some 'discernible relationship'" between the claims at issue and the defendant's business transacted in the District of Columbia. *Id.* at 335.  On the facts there, the court held that, where Shoppers "has deliberately and directly

solicited District residents to become customers in its Maryland and Virginia stores, there can be no doubt that its advertising relates to or has a discernable relationship to a claim by a District resident who becomes a customer" and is injured in one of the company's stores. *Id.* at 335-36.

Plaintiff has not presented the court with a record "replete" with the television advertisements it claims Cordish runs in the District of Columbia. In fact, all it has done is allege in its Amended Complaint that Cordish ran such advertisements. Am. Compl. Jurisdiction and Venue ¶ 3. Of course, given the early stage of this case, Plaintiff has not had the opportunity to conduct discovery to substantiate its jurisdictional allegation. Importantly, even though Defendant has submitted its own affidavits, it has *not* denied, or offered contrary proof, that it runs televisions advertisements on District of Columbia television stations to attract District residents to Maryland Live!. Thus, at this stage of the case, the court concludes that Plaintiff's specific, uncontested factual averment about Cordish's advertising in the District of Columbia, and his allegation that his claim arose from that advertising, is sufficient under *Shoppers Food* to avoid dismissal of its complaint under Rule 12(b)(2). *See Crane*, 894 F.2d at 456 (stating that on a Rule 12(b)(2) motion "factual discrepancies appearing on the record must be resolved in favor of the plaintiff"); *Ulico Cas. Co. v. Fleet Nat. Bank*, 257 F. Supp. 2d 142, 144 (D.D.C. 2003) ("The plaintiff must allege specific acts connecting the defendant with the forum.").

The court's ruling should not be understood by either party to mean that Plaintiff has definitively established personal jurisdiction over Cordish. Rather, the issue remains open for resolution on summary judgment. At that stage, Plaintiff will have to come forward with *evidence* about the actual content and pervasiveness of Cordish's alleged advertising in the District of Columbia, and any other evidence that Cordish transacts business in the District, to meet its burden

of proving personal jurisdiction.  But, at this early stage, before Plaintiff has had any opportunity to take discovery, Defendant's motion to dismiss must be denied.

## III.     CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is denied.  Defendant Cordish shall answer the operative complaint within the time provided under Federal Rule of Civil Procedure 12(a)(4).

Dated:  July 24, 2015                              Amit P. Mehta
                                                   United States District Judge